*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JUSTIN OVERLEY,

        Plaintiff-Appellee,

v

J STEVENS CONSTRUCTION, INC., and
MICHIGAN INSURANCE COMPANY,

        Defendants-Appellants,

and

QUANDEL CONSTRUCTION and ZURICH
AMERICAN INSURANCE COMPANY,

        Defendants.

UNPUBLISHED
April 15, 2025
1:36 PM

No. 366623
Workers' Disability Compensation
Appeals Commission
LC No. 19-000024

Before: RIORDAN, P.J., and YATES and ACKERMAN, JJ.

PER CURIAM.

-1-

In this workers' compensation action, defendants[1] appeal by leave granted[2] the opinion and order of the Workers' Disability Compensation Appeals Commission ("the Commission")[3], affirming the order of the Workers' Compensation Board of Magistrates, which had affirmed the magistrate's determination that plaintiff was entitled to collect workers' compensation benefits. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of injuries sustained by plaintiff in July 2015, when plaintiff was present on the roof of a nursing facility in Livonia in connection with a construction project involving J Stevens. While plaintiff was working on the roof, he fell to the ground and suffered significant spinal injuries resulting in paralysis. The pertinent facts of the instant matter previously were summarized by the Commission in its April 14, 2022 opinion, *Overley v J Stevens Construction, Inc*, 2022 Mich ACO 4, pp 3-4 (*Overley I*), as follows:

> This case involves an injury sustained on a construction project at Marycrest Manor in Livonia, Michigan. Quandel Construction ("Quandel") was the construction manager on the project. Quandel retained J Stevens to act as its roofing contractor. J Stevens was permitted to hire subcontractors and sought to enter into an agreement with Wolf Lake Construction Company, LLC ("Wolf Lake"), to help with a portion of the roof.
>
> Wolf Lake was a limited liability company [LLC] formed in June of 2015 by Jonathan M. Alviar, Raul C. Alviar, and William A. Bluhm. Raul Alviar signed the subcontractor agreement for Wolf Lake under the legend "Authorized Signature." According to that agreement, Wolf Lake was to have workers' compensation insurance. However, it did not.
>
> Plaintiff testified that Raul Alviar came to his house, indicating that he needed an extra hand to help with a roofing job and offering to pay $10/hour. Plaintiff accepted the offer. Raul Alviar borrowed an old J Stevens van to transport the workers to the jobsite. Andrew Stevens, project manager for J Stevens, testified

---

[1] J Stevens Construction, Inc. ("J Stevens") and Michigan Insurance Company ("Michigan Insurance") will be jointly referred to as "defendants," and the aforementioned parties will be distinguished by name when necessary. While there are other defendants in the instant matter, none have filed appellate briefs.

[2] See *Overley v J Stevens Construction, Inc*, unpublished order of the Court of Appeals, entered January 3, 2024 (Docket No. 366623).

[3] Executive Reorganization Order No. 2019-13 created the Workers' Disability Compensation Appeals Commission to manage, process, and decide appeals from orders of the Director of the Workers' Disability Compensation Agency and the Workers' Compensation Board of Magistrates. This commission was previously titled the Michigan Compensation Appellate Commission (MCAC). Because the name of this administrative tribunal has shifted over the years, this opinion simply refers to this body as "the Commission" throughout.

that he expected the riders to include Raul Alviar, his son Jonathan Alviar, and a person he referred to as "[t]he other principal" of Wolf Lake, whose name he did not know. Plaintiff indicated that the other individual was William Bluhm. Raul Alviar drove the van to the jobsite on July 26, 2015, and the other two individuals referred to by Andrew Stevens were passengers, along with plaintiff and two others. Raul Alviar put everyone up overnight in hotel rooms registered in his name and paid for by him.

On July 28, 2015, his second day on the job, plaintiff sustained significant injuries in a fall off the roof. Raul Alviar prepared an incident report, which he signed on the line for the supervisor's signature.

\* \* \*

Plaintiff filed an application for mediation or hearing on October 26, 2015, claiming severe and permanent injuries as the result of his fall off the roof at Marycrest Manor on July 28, 2015. In that application, plaintiff named J Stevens as his "statutory employer," pursuant to Section MCL 418.171(1). Plaintiff thereafter filed numerous applications adding various defendants in assorted capacities, as did J Stevens. Many of these defendants were subsequently dismissed.

At the time of the hearing, in addition to J Stevens and its workers' compensation carrier, Michigan Insurance Company [Michigan Insurance], the remaining defendants included Quandel and its carrier, Zurich American Insurance Company ("Zurich American"), as well as Wolf Lake and individuals Raul C. Alviar, William A. Bluhm, and Jonathan M. Alviar. However, only plaintiff, J Stevens and Michigan Insurance Company, Quandel and Zurich American, and their attorneys appeared at the hearing, although notices were mailed to all other parties.

After a trial held over four days, the magistrate found that plaintiff was an employee of Wolf Lake, and suffered a disabling, work-related injury on July 28, 2015. Plaintiff was granted an open award accordingly. Because Wolf Lake was uninsured, J Stevens was found to be plaintiff's statutory employer pursuant to MCL 418.171(1), and liability was assessed against its workers' compensation carrier, Michigan Insurance Company. J Stevens and Michigan Insurance Company were granted a right to indemnification and reimbursement from Wolf Lake "and/or its principals, including Raul C. Alviar, Jonathan M. Alviar and William A. Bluhm, jointly and severally, for all workers' compensation benefits ultimately payable to Plaintiff or otherwise paid to third parties on his behalf, including medical providers, pursuant to WDCA sec. 171(2). MCL 418.171(2)." All other defendants were dismissed. [Citations omitted.]

Following the issuance of the aforementioned magistrate's opinion and order, on August 1, 2019, defendants filed an appeal contending that Raul Alviar lacked the requisite authority to enter into a subcontractor agreement with J Stevens on behalf of Wolf Lake, which was necessary

to establish J Stevens as plaintiff's statutory employer under MCL 418.171(1). *Overley I* at 4. Plaintiff responded that Alviar maintained "actual and/or apparent authority" to act on behalf of Wolf Lake. Quandel and Zurich American agreed, and alternatively advanced that if Alviar lacked the requisite authority to act as a representative of Wolf Lake, Alviar himself may be considered as plaintiff's employer, which would still render J Stevens liable for benefits as the statutory employer. *Id*.

The Commission addressed the parties' aforementioned arguments in *Overley I*, and it determined that the existing record was inadequate to resolve the matters raised on appeal as the magistrate's opinion "often treats Wolf Lake and Raul Alviar as effectively interchangeable, without explaining why." *Id*. The Commission further opined that under the Michigan Limited Liability Company Act (MLLCA), MCL 450.4101 *et seq*., there were four classes of individuals, namely, organizers, managers, members, and authorized agents, who may possess the authority to act on behalf of an LLC. *Id*. at 4-5. The Commission additionally stated that common-law agency principles may be pertinent in determining whether an individual was empowered to act on behalf of an LLC. *Id*. at 6-7. The Commission remanded the matter to the magistrate for further proceedings. *Id*. at 8.

On February 9, 2023, the magistrate issued an opinion on remand, holding that (1) Wolf Lake acted as plaintiff's direct "employer" under MCL 418.171 due to Alviar's conduct, as Alviar "effectively held himself out to be an 'authorized agent' of the same possessing either apparent and/or implied authority to act on its behalf"; and (2) because Wolf Lake lacked workers' compensation insurance when it was employed as a subcontractor of J Stevens, J Stevens was required to pay plaintiff's benefits under MCL 418.171. Defendants filed a supplemental brief after remand contending that (1) Alviar lacked the requisite legal authority to enter into a contractual agreement with J Stevens on behalf of Wolf Lake, as Alviar was neither a manager nor a member of the LLC; and (2) because the aforementioned agreement was invalid, J Stevens could not be held liable for purposes of statutory-employer liability under MCL 418.171. Plaintiff also filed a supplemental brief advancing that (1) under the principle of apparent authority, Wolf Lake placed Alviar in a position where he appeared with reasonable certainty to be acting on behalf of the LLC, which included the acts of employing persons for Wolf Lake and entering into contractual agreements on its behalf; and (2) because Wolf Lake was plaintiff's employer and Wolf Lake served as a subcontractor for J Stevens during the subject incident, J Stevens was required to provider workers' compensation benefits to plaintiff under MCL 418.171.

On May 19, 2023, the Commission issued an opinion and order affirming "the magistrate's findings that Wolf Lake was plaintiff's employer and that J Stevens was engaged in an undertaking with Wolf Lake when its employee was injured[,]" and finding, "Because Wolf Lake was uninsured for workers' compensation purposes, the magistrate correctly held that J Stevens was plaintiff's 'shoot-through' or statutory employer, pursuant to MCL 418.171." *Overley v J Stevens Construction, Inc*, 2023 Mich ACO 5, p 6 (*Overley II*).[4] The Commission agreed with defendants that "Alviar's status as an organizer of the LLC did not permit him to act on Wolf Lake's behalf,

_____

[4] We note that the Commission's May 19, 2023 opinion and order is the order appealed by defendants.

-4-

nor was there proof that he was either a manager or a member empowered to do so." *Id.* at 3. However, the Commission noted that the magistrate did not determine that Alviar's authority to bind Wolf Lake resulted from his alleged role as a manager or member. *Id.* Rather, the magistrate determined that Alviar acted as an agent of Wolf Lake. *Id.* The Commission reasoned that the principles of apparent or implied agency were compatible with the MLLCA, "implicit by virtue of surrounding facts and circumstances and not premised upon specific statutory language or express authority." *Id.* at 3-4.

The Commission further opined:

If Raul Alviar was not expressly accorded the power to act on Wolf Lake's behalf, he was certainly cloaked with apparent or implied authority to do so in accordance with these principles. A person of reasonable prudence would have so believed given the circumstances, whether or not Alviar actually possessed the authority he exerted.

* * *

Raul Alviar carried himself like a person with the authority to conduct business on behalf of Wolf Lake. He entered into a subcontracting agreement with J Stevens, contacted potential employees, transported them to the jobsite and housed them nearby, and obtained medical care for plaintiff after his injury. The performance of each of these tasks suggested that he had authority to act on Wolf Lake's behalf.

Plaintiff trusted in that apparent authority enough to accept a job, travel with Raul Alviar from Muskegon to Livonia, and start work on the project. Plaintiff is presumably a reasonably prudent person and he justifiably relied upon authority suggested by Alviar's actions.

J Stevens clearly believed that Raul Alviar had authority to deal with it as well, since one of its officers signed a "STANDARD CONTRACT— SUBCONTRACTORS" with Alviar's name indicated as the "Authorized Signature" for Wolf Lake. J Stevens also loaned Alviar a van to bring workers to the jobsite, permitted those brought by Alviar to work on its job, and issued a check to Wolf Lake for the work done on the job. In essence, another reasonably prudent person or persons believed that Alviar had the authority to undertake those activities on Wolf Lake's behalf.

Wolf Lake itself did nothing to suggest otherwise. It took no action to disavow Raul Alviar's actions on its behalf and, instead, placed him in a position to seemingly act on its behalf. The record reveals no objections from Wolf Lake as to any of Alviar's actions, nor is there any indication that Wolf Lake refused the job for which Alviar contracted or that it did not accept the check issued by J Stevens for work performed. [*Id.* at 5-6.]

In light of the aforementioned circumstances, the Commission advanced that the magistrate properly concluded that Wolf Lake "placed Alviar in a position where he appeared with reasonable certainty to be acting for it or, at the least, that it did not prevent Alviar from asserting such authority . . . ." *Id*. at 6. Furthermore, both plaintiff and J Stevens may rightly believe that Alviar was acting within the scope of his powers derived from Wolf Lake when Alviar extended employment to plaintiff, and he entered into a subcontracting agreement with J Stevens on the LLC's behalf. *Id*. Thus, the Commission concluded, the magistrate correctly held that J Stevens was plaintiff's "shoot-through" or statutory employer under MCL 418.171, as Wolf Lake was plaintiff's employer, J Stevens was engaged in an enterprise with Wolf Lake when its employee was injured, and Wolf Lake was uninsured. *Id*. at 6. After the issuance of *Overley II*, this appeal ensued.

## II. WORKERS' COMPENSATION

Defendants argue that the Commission erroneously determined that plaintiff was entitled to collect workers' compensation benefits from defendants because the administrative tribunal misconstrued the "statutory" or "shoot-through" employment provision of the Worker's Disability Compensation Act of 1969 (WDCA), MCL 418.101 *et seq*. We disagree.

Pursuant to MCL 418.861a(3), the Commission examines the entire record to determine whether the magistrate's factual findings are supported by competent, material, and substantial evidence; if such evidentiary support exists, the magistrate's findings of fact are considered conclusive. Substantial evidence is defined as "such evidence, considering the whole record, as a reasonable mind will accept as adequate to justify the conclusion." MCL 418.861a(3). MCL 418.861a(14) governs judicial review of the Commission's decisions, providing:

> The findings of fact made by the commission acting within its powers, in the absence of fraud, shall be conclusive. The court of appeals and the supreme court shall have the power to review questions of law involved with any final order of the commission, if application is made by the aggrieved party within 30 days after the order by any method permissible under the Michigan court rules.

Questions of law involved in workers' compensation cases are reviewed de novo. *McQueer v Perfect Fence Co*, 502 Mich 276, 285; 917 NW2d 584 (2018). "Questions of statutory interpretation are likewise reviewed de novo." *Id*. at 285-286. A decision of the Commission "is subject to reversal if it is based on erroneous legal reasoning or the wrong legal framework." *Ross v Modern Mirror & Glass Co*, 268 Mich App 558, 561; 710 NW2d 59 (2005). "An administrative agency's interpretation of a statute is accorded respectful consideration and should not be overturned without cogent reasons." *Cramer v Transitional Health Servs of Wayne*, 512 Mich 23, 42; 1 NW3d 9 (2023).

"Ideally, the dual purpose of the WDCA is to streamline the payment and receipt of benefits for workers who are injured on the job and to limit employers' exposure to individual lawsuits by injured workers." *Wittenberg v Bulldog Onsite Sols, LLC*, 345 Mich App 550, 555; 7 NW3d 95 (2023). Employees, as defined in the WDCA, are subject to the exclusive-remedy provision of the act, MCL 418.131(1). *Id*. Accordingly, with the exception of certain intentional torts, employees subject to the exclusive-remedy provision are barred from pursuing legal action against their

-6-

employer for a workplace injury unless it is to recover WDCA benefits. *Id*. at 555-556. However, there is an additional provision within the WDCA extending the statute's protections to employees of contractors that are either uninsured or not subject to the WDCA by deeming the contractor's employer the "statutory employer" or "shoot-through employer" of the injured person, due to the contractual relationship between the employer and contractor. See MCL 418.171. Thus, while plaintiff's direct employer was Wolf Lake as opposed to J Stevens in the instant matter, the exclusive-remedy provision nonetheless is applicable if J Stevens qualifies as plaintiff's statutory employer pursuant to MCL 418.171(1). The pertinent question before this Court is whether the principles of apparent or implied agency may be used to enlarge the scope of the statutory-employer clause under MCL 418.171, such that plaintiff is permitted to recover under the WDCA.

MCL 418.171 provides, in pertinent part:

> (1) If any employer subject to the provisions of this act, in this section referred to as the principal, contracts with any other person, in this section referred to as the contractor, who is not subject to this act or who has not complied with the provisions of section 611, and who does not become subject to this act or comply with the provisions of section 611 prior to the date of the injury or death for which claim is made for the execution by or under the contractor of the whole or any part of any work undertaken by the principal, the principal shall be liable to pay to any person employed in the execution of the work any compensation under this act which he or she would have been liable to pay if that person had been immediately employed by the principal. If compensation is claimed from or proceedings are taken against the principal, then, in the application of this act, reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the person under the employer by whom he or she is immediately employed. A contractor shall be deemed to include subcontractors in all cases where the principal gives permission that the work or any part thereof be performed under subcontract.

> * * *

> (3) This section shall apply to a principal and contractor only if the contractor engages persons to work other than persons who would not be considered employees under section 161(1)(d).

As explained by our Supreme Court in *McQueer*, 502 Mich at 288, "Subsection (1) sets forth a statutorily imposed employment relationship, under which an employer assumes the role of a 'principal' by contracting with an independent contractor, referred to as the 'contractor,' for the performance of any work." The principal assumes responsibility for the payment of workers' compensation benefits to "any person employed" by the contractor for injuries incurred while executing any work on the principal's behalf, contingent that the contractor neglected to acquire sufficient insurance as mandated by the WDCA, or the contractor is not subject to the WDCA. *Id*. Accordingly, subsection (1) "statutorily imposes an employment relationship between the principal and the contractor's uninsured employees for purposes of providing workers' compensation benefits" through the tripartite employment relationship between the principal, the contractor, and the contractor's employees. *Id*. at 288-289. Stated alternatively, MCL 418.171

-7-

works as a "safety net" to protect the employees of contractors lacking adequate workers' compensation insurance. *Id*. at 290. Finally, subsection (3), "worded in the affirmative," states that MCL 418.171 is applicable to a principal and contractor only if the contractor engages employees, as defined in other provisions of the WDCA. *Id*. at 288.

In the instant matter, defendants essentially contend that because Alviar was neither a member nor a manager of Wolf Lake, and because apparent and implied agency principles are inapplicable to the MLLCA, Alviar did not maintain the legal authority to enter into a contractual agreement with J Stevens. See *id*. at n 20 (providing that "[f]or an employee to recover from a principal under [MCL 418.171(1)], there must be, among other things, a contract between the principal who is covered by the WDCA and a contractor employer who is not covered") (quotation marks and citation omitted). MCL 450.4401, a section of the MLLCA, states, in relevant part:

> Unless the articles of organization state that the business of the limited liability company is to be managed by 1 or more managers, the business of the limited liability company shall be managed by the members, subject to any provision in an operating agreement restricting or enlarging the management rights and duties of any member or group of members. . . .

MCL 450.4402(1) further provides:

> The articles of organization may provide that the business of the limited liability company shall be managed by or under the authority of 1 or more managers. The delegation of the management of a limited liability company to managers is subject to any provision in the articles of organization or in an operating agreement restricting or enlarging the management rights and duties of any manager or group of managers.

"If the articles of organization delegate management of a limited liability company to managers, the articles of organization constitute notice to third parties that managers, not members, have the agency authority described in section 406." MCL 450.4402(4). "A manager is an agent of the limited liability company for the purpose of its business, and the act of a manager, including the execution in the limited liability company name of any instrument . . . binds the limited liability company." MCL 450.4406. Simply put, as expressed in the aforementioned MLLCA provisions, managers or members generally are the only individuals empowered by the MLLCA to act on behalf of an LLC, and thus, engage in contractual agreement with other parties on behalf of the entity.

In *Overley II*, the Commission agreed with defendants that "Alviar's status as an organizer of the LLC did not permit him to act on Wolf Lake's behalf, nor was there proof that he was either a manager or a member empowered to do so." *Overley II*, 2023 Mich ACO 5, p 3. However, the Commission stated that the magistrate did not conclude that Alviar's authority to bind Wolf Lake derived from his purported role as a manager or member; rather, the magistrate resolved that Alviar acted as an agent of Wolf Lake. *Id*. The Commission opined that the principles of apparent or implied agency were compatible with the MLLCA, "implicit by virtue of surroundings [sic] facts and circumstances and not premised upon specific statutory language or express authority." *Id*. at 3-4. We agree, particularly taking into consideration the chronology of events pertaining to the

formation of Wolf Lake, the signing of the contractual agreement with J Stevens, and Alviar's dealings with plaintiff and J Stevens.

Wolf Lake was formed in June 2015, following contact between Alviar and an employee of J Stevens regarding the underlying construction project, with Alviar and two additional "organizers" signing the articles of organization. The articles of organization did not designate any of the organizers, or any other persons, as "members" or "managers" of Wolf Lake, no evidence was advanced by any of the parties during the lower-court proceedings indicating otherwise, and Wolf Lake was not subject to any operating agreement. Two days after the formation of Wolf Lake, the subcontracting agreement regarding Marycrest Manor was signed between Wolf Lake and J Stevens, with Alviar's name listed under the "authorized signature" provision. Furthermore, the only person of the three organizers who maintained any relationship with J Stevens prior to and during the performance of the contract was Alviar. However, under the previously cited MLLCA provisions, no individual maintained the express authority to explicitly and legally act on Wolf Lake's behalf, as none of the organizers were designated members or managers of the LLC. Under the aforementioned circumstances, it was reasonable to examine whether there was any person who maintained the apparent or implied authority to proceed as a representative of Wolf Lake. See *Wigfall v Detroit*, 504 Mich 330, 340; 934 NW2d 760 (2019) (stating that under the common law of agency, "in determining whether an agency has been created, we consider the relations of the parties as they in fact exist under their agreements or acts and note that in its broadest sense agency includes every relation in which one person acts for or represents another by his authority") (quotation marks and citation omitted).

As detailed by this Court in *DBD Kazoo LLC v Western Mich LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 361299); slip op at 6 (quotation marks and citations omitted):

> Under fundamental agency law, a principal is bound by an agent's actions within the agent's actual or apparent authority. The authority of an agent to bind a principal may be either actual or apparent. Actual authority may be express or implied. Implied authority is the authority which an agent believes he possesses. Implied authority consists of the power to do all things which are reasonably necessary or proper to efficiently carry into effect the power conferred, unless it be a thing specifically forbidden. Whether the act in question is within the authority granted depends upon the act's usual or necessary connection to accomplishing the purpose of the agency. Implied authority is not without limits: The apparent or implied authority of an agent cannot be so extended as to permit him to depart from the usual manner of accomplishing what he is employed to effect. Nor can he enlarge his powers by unauthorized representations and promises. An implied agency cannot exist contrary to the express intention of an alleged principal although it may spring from acts and circumstances permitted by the principal over a course of time through acquiescence.
>
> Actual authority of an agent may be implied from the circumstances surrounding the transaction at issue. These circumstances must show that the principal actually intended the agent to possess the authority to enter into the transaction on behalf of the principal. Apparent authority arises where the acts and

appearances lead a third person reasonably to believe that an agency relationship exists. However, apparent authority must be traceable to the principal and cannot be established only by the acts and conduct of the agent. Whether an agent possessed apparent authority to perform a specific act requires the court to review all surrounding facts and circumstances and determine whether an ordinarily prudent person in the relevant business would be justified in assuming that the agent had authority to act on behalf of the principal as alleged.

While defendants contend that the principles of apparent and implied agency are incompatible with the MLLCA, MCL 450.4103 recognizes the existence of individuals, beyond managers and members, capable of acting on behalf of an LLC, as it states:

> (1) One or more persons organizing a limited liability company shall sign the original articles of organization as organizers. The articles shall state the names of the organizers beneath or opposite their signatures.
>
> (2) Any document other than original articles of organization required or permitted to be filed under this act that this act requires be executed on behalf of the domestic limited liability company shall be signed by a manager of the company if management is vested in 1 or more managers, by at least 1 member if management remains in the members, *or by any authorized agent of the company*.
>
> (3) A person may sign a document under this section *as an authorized agent of a limited liability company*. If the authorization is pursuant to a power of attorney, the power of attorney authorizing the signing of the document by the person need not be sworn to, verified, acknowledged, or filed with the administrator. A document signed by a person under this subsection as an authorized agent of a limited liability company shall state the capacity of the person signing the document. [Emphasis added.]

Furthermore, our appellate courts previously have applied the principles of apparent or implied agency in resolving disputes featuring LLCs, when warranted by the surrounding facts. See *DBD Kazoo*, ___ Mich App at ___; slip op at 5-8 (stating that "[t]he record reflects that the trial court considered and analyzed all of the surrounding facts and circumstances and determined that the evidence did not establish that [a defendant] had actual or apparent authority traceable to the Sellers" or "to serve as the Sellers' agent with authority to make representations to [the credit company] regarding the physical or financial condition of the Property"); see also *Altobelli v Hartmann*, 499 Mich 284, 298; 884 NW2d 537 (2016) (noting that "[t]he MLLCA explicitly refers to agency authority and the ability of individuals to act as agents for limited liability companies, which further supports the application of agency principles to interpret the instant arbitration clause").

In light of the aforementioned circumstances and authority, the Commission did not err when it determined that plaintiff was entitled to collect workers' compensation benefits because, under MCL 418.171, J Stevens served as plaintiff's "shoot-through" employer, given that principles of apparent and implied agency are within the scope of MCL 418.171 and the MLLCA. Concluding otherwise would permit LLCs to purposefully omit the designation of "manager" or

"member" in its articles of organization, or subsequent documentation, in an attempt to avoid liability under the WDCA, as no identifiable individual would possess the requisite authority to bind the LLC. See *McQueer*, 502 Mich at 289 ("In general, statutory-employer provisions generally prevent an employer from escaping workers' compensation liability by contracting with uninsured contractors to do work that is part of the employer's trade, business, or occupation.").

## III. CONCLUSION

The Commission correctly concluded that plaintiff was entitled to workers' compensation benefits under MCL 418.171. We affirm.


/s/ Michael J. Riordan
/s/ Christopher P. Yates
/s/ Matthew S. Ackerman